Troy Tucker v. Doc Holladay Ms. Amber Davis? Tanner? Yes, Your Honor. Let's see, I have not been given a copy of the papers that have appointed someone to represent the deceased Mr. Tucker. Yes, Your Honor. We are working with... What do you mean you're working? Do you have standing without having a personal representative appointed? The federal rules of civil procedure give us 90 days after the suggestion of death. Okay, and you'll have yours within 90 days? Yes, Your Honor. Okay, thank you. You may proceed. Thank you. Good morning, and may it please the court. We are asking the court today to reverse the trial court's grant of summary judgment in favor of the appellees. The trial court made several improper determinations of fact when analyzing the appellee's motions for summary judgment, and therefore the decision should be reversed. First, I'm going to address Mr. Tucker's excessive force claims, and then I'll talk about his deliberate indifference claims. Now, this court obviously is very familiar with the standard for summary judgment, but it bears repeating here very briefly just because of the issues in this case. The summary judgment standard... Summary judgment is appropriate only when there's no genuine issue of material fact. All inferences must be drawn most favorably to the non-movement, and in this case, obviously, that's Mr. Tucker. Under Anderson v. Liberty Lobby, the court's job is not to weigh the evidence and determine the truth. Instead, the trial court's purpose on summary judgment is to determine whether there is a genuine issue for trial. The Supreme Court looked at whether an issue is, in fact, a genuine issue for trial in Scott v. Harris. In that case, the court decided that there's no genuine issue of fact when the non-moving party's statements are so blatantly contradicted by the record that no reasonable jury could believe them. The most important fact in that case, which is underlined by the Supreme Court, is that there was, in fact, a video of the plaintiff's behavior. The plaintiff's testimony in that case was so blatantly and completely contradicted by the video that no reasonable jury could have believed his testimony. This court has applied the standards in Scott v. Harris a few times, and most of those cases also involve irrefutable evidence, including videos or sound recordings. However, this court has addressed that standard in one case that doesn't involve such irrefutable evidence, and that case was Reed v. St. Charles. In that case, this court held that the fact finder cannot resort to speculation, conjecture,  Were there any witnesses that observed his being taken back to his bunk? Your Honor, yes. It's undisputed that several nurses and other prison officials responded to the code on January 7th. However, the number of witnesses that would have witnessed this goes to the weight of the facts, not whether or not Mr. Tucker has presented an issue of material fact for trial. As I was saying, this case is unlike that presented in Reed. In Reed, a third-party, completely independent doctor had examined the plaintiff and found that the injury that he was claiming just couldn't have happened the way that he said it did. And the plaintiff himself in that case entered a guilty plea on the resisting arrest charge, which is the situation in which he claims he was subjected to excessive force. Now, Mr. Tucker's case on his excessive force Don't they come in two different postures, though? In Scott, wasn't it where a qualified immunity had been granted? And here and in Reed, wasn't it a situation where summary judgment had been entered for the defendants? And doesn't that make a difference as to whether we apply Reed or not? Your Honor, first of all, I believe the court should continue to apply Reed. I just think that it's so distinguishable from this case that it wouldn't apply. Well, okay, but aren't we left pretty much here with his unsubstantiated allegation of the karate chop to the nose? Your Honor, no. We are not left with his unsubstantiated allegation. We have the altercation form, which shows an injury to his hip, which was actually completed by one of the defendants. Well, I'm talking about the hit to the nose first. We have his testimony, which is correct. We also have his contemporaneous, I think, grievance form where he didn't include that, right? I believe his grievance form primarily discusses the injury to his back that he received. It doesn't talk about being smacked in the nose. I think that's correct. However, the nose strike is not the only component of the excessive force in this case. So are you conceding that the nose strike should be affirmed? No, Your Honor. All right, so then what do we have other than his unsubstantiated allegation on the nose strike? And then you can tell me about the back. Sure, sure. A witness's testimony or a party's testimony is still evidence in a case. We have Mr. Tucker's testimony, which is evidence that he was struck by Nurse Anderson. On the other side, we have Nurse Washburn's testimony that he was not struck by Nurse Anderson. Nurse Anderson states that she doesn't remember anything about the January 7th Code. So what we have here is just a normal civil dispute that's present in so many different cases where the plaintiff has his version of events and the defense is presenting a separate version of events. There are no photographs, no videos, no kind of evidence like that showing whether or not Nurse Anderson did strike Mr. Tucker in the nose. And because of the summary judgment standard, because this is disputed, the court should have viewed those facts and the like most favorable to Mr. Tucker. On to Mr. Tucker's other excessive force claims involving the dragging and dropping on the bunk. Again, we have one witness's testimony against another. We also have the altercation form, which substantiates Mr. Tucker's statements that he was violently dropped and that he did suffer an injury from the nurse's behavior. These disputed- What was the injury? Mr. Tucker's injury on the altercation form was an injury, a contusion, or a scratch to his back, and Mr. Tucker continued to complain about pain in his back for some time after he was dropped. These disputed facts do show an issue- I'm sorry. These disputed facts, if viewed in the like most favorable to Mr. Tucker, can show a claim for excessive force. A prison official- A claim for excessive force can be successful when a prison official uses force and injures a detainee. To be constitutional force, it must be necessarily incident to the administrative interest in safety, security, and efficiency. An application of force is constitutionally infirm when it's punitive in intent, not rationally related to a legitimate purpose, or if it is rationally related, that it was excessive. You'll see from the construction of that that Mr. Tucker does not have to prove intent, first of all, and the trial court discusses at length whether or not he was able to prove intent on the part of the nurses. This application of force was not rationally related to a legitimate purpose. The nurses both claimed that they were responding to a code. However, there's no reason in a situation where none of the parties are arguing that Mr. Tucker was being belligerent, he was not yelling, he was not resisting in any way, there's no reason that he would need to suffer a strike to the nose and then be violently dragged and dropped onto his bunk. And he was dropped onto the bed, not the floor, right? Correct, yes. Any evidence from how high he was dropped? He testified that they sort of dragged him and dropped him, so the implication is sort of from the height that one would be. And he believes the nurses were tired of dealing with his problems. Yes, Your Honor. After he was dropped, Mr. Tucker heard Nurse Anderson say, And before she even responded to the code, she made a comment about how, oh, it's Tucker again. Even if this court did require intent, those types of statements, when viewed in the light most favorable to Mr. Tucker, can show intent by Nurse Anderson to harm him. However, we do submit that intent is not required. I'll move on. It's just a pure and simple negligence action. I'm sorry, Your Honor? It's a pure and simple negligence action. They negligently dropped him on the bunk when they should have laid him there very carefully. No, Your Honor. Mr. Tucker's testimony and the other evidence could show that he was subjected to excessive force because he was injured at the hands of prison officials and their application of force was not rationally related to a legitimate purpose of treating him. Doesn't he have a deliberate indifference claim, too? I'm sorry, Your Honor? Doesn't he have an indifferent? Yes. Yes, I'll move quickly to the deliberate indifference claim. Again, the trial court made impermissible finding a fact. The most important disputed fact when it comes to the deliberate indifference claim is the date on which the wound on his stomach was actually examined by Dr. Johnson. Mr. Tucker testified that he had a painful wound on his stomach when he came to the jail in September. The wound was bloody, oozing pus, and very painful. Mr. Tucker not only testified to this in his deposition, he told jail officials and Dr. Johnson time and time again about this wound on his stomach that was possibly infected. You can see on his critical care intake form from October 16th that he complained of, quote, a hole in his stomach, which is consistent with what he complained of consistently in his grievance forms in his request for medical care. Do you concede on October 16th that Dr. Johnson examined his abdomen? We concede that Dr. Johnson performed some examination. However, we do not concede that he actually visually inspected the wound or provided any kind of treatment at that time. So is your argument that the facts that he examined his abdomen without lifting his shirt, is that? Yes, Your Honor. The medical record doesn't say anything about the appearance of the wound or the wound itself. The medical record only discusses that Mr. Tucker's bowel sounds were normal and that his abdomen was not distended. I think all of us have had a situation in which a doctor has listened to our stomach over our shirt. Does Mr. Tucker testify to that? Mr. Tucker testified that Dr. Johnson did not examine the wound on October 16th when he first saw him. So by implication, yes. Your Honors, I'm cutting into my rebuttal time at this point. If it's okay, I would like to reserve some time. You may reserve it. Thank you. Thank you. Let's see. There are several appellees, and you are Mr. Spivey? Spivey. Spivey, Your Honor. You may proceed. May it please the Court, I represent the county appellees here, that's Sheriff Holliday, Chief Morgan, Nurse Smith, and Nurse Washburn. To go in the order of the appellant's arguments, the excessive force claim against Nurse Washburn, the district court applied the correct analysis and asked the question, did this force amount to punishment, or was it something rationally related to a legitimate government interest and was the force excessive in the context of that purpose? The court first found there was no express intent to punish. That's true. The appellant admitted that he believed Nurse Washburn was there to help him. She was responding to a code. He admitted Nurse Washburn didn't say anything during the course of her response that made him believe she wanted to hurt him. He admitted that she intended and wanted to help him. And so, Judge Wollman, I think you pointed out correctly, this really gets into why did he get dropped onto his bunk? Didn't one of the nurses say something like, there, that'll wake him up? Not Nurse Washburn, Your Honor. And that happened at the very end after all of this had transpired, after Mr. Tucker had been moved from the hard concrete floor where they found him, moved him to his bunk. I believe he testified that Nurse Anderson said when she was leaving the unit that that ought to wake him up. There's no evidence of any such testimony by Nurse Washburn. I think it's clear she was there to help him. The fact that he got dropped in and of itself is not evidence of any excessive force without any showing of intent. I think if he was dropped, I think it was as a result of negligence, an accident, frankly. The second point on that is there's no evidence of injury from any of this conduct. Tucker says he hurt his back during this. There's no medical evidence of a back injury. His attorneys have now pointed to a hip injury that is in the medical records. I don't believe Mr. Tucker ever complained of that, and there's no direct evidence that that hip injury happened during this event. So I believe that clearly Nurse Washburn is entitled to summary judgment on the issue of excessive force. Moving on quickly to the deliberate indifference claim that's primarily directed at Dr. Johnson, but Chief Morgan did review some grievances filed by Mr. Tucker, complaining that he wasn't getting the medical care he needed. By the time Chief Morgan received the grievance and reviewed the grievance officer's response, it was clear to him that Mr. Tucker wrote the grievance the first time before he saw Dr. Johnson. He then saw Dr. Johnson was resumed on his free world medication, also given some pain medication. There's evidence in that October medical record that Dr. Johnson examined Mr. Tucker's abdomen. And so by the time Chief Morgan is reviewing the grievance appeal, he has reason to believe that Dr. Johnson is addressing Mr. Tucker's medical needs. And there's nothing from the record that would cause him concern to think he needed to second-guess Dr. Johnson or do more in this case. You know, I also believe Dr. Johnson himself was not deliberately indifferent, and without any finding that Dr. Johnson was deliberately indifferent, I don't think Chief Morgan or the sheriff or anyone can have any liability. They certainly shouldn't be charged with directing Dr. Johnson to change the way he treats patients unless Dr. Johnson's conduct is deliberately indifferent. And if I may, I need to reserve a little time for the other athletes. Very well. Thank you. May it please the Court, my name is Catherine Corliss, and I represent Dr. Johnson in this action. I apologize a little bit for going out of order. We didn't know exactly which direction the appellant would go in today, so I have to address the deliberate indifference first. The Court discussed quite a bit, though, during the discussion about excessive force, about unsubstantiated evidence. That's not the situation we have here. We don't have a situation where Dr. Johnson has simply submitted an affidavit, and it's contrary to what Mr. Tucker says. We have a situation where Mr. Tucker himself – Could you raise the lectern a bit so that you're closer to the – there's a button to one side there. I'm so tall, I'm sorry. I'm the first one who's had to do that here today. Is that better? It's safe to be tall. Thank you. I shouldn't have worn heels. I should have stuck with the flats. This is a situation where Mr. Tucker himself has offered contradictory testimony, and therefore I believe what the most important evidence is is that when I asked Mr. Tucker in his deposition, did Dr. Johnson examine this wound, the wound that had the small thread that was sticking out of it, that had a small amount of blood that was coming out of it, a small amount of pus coming out of it, he said that, yes, in fact, Dr. Johnson did. Now, has he said at other times that Dr. Johnson didn't do that? Absolutely. He said it in the complaint. He said it in some grievance forms. He said it at another time during his deposition. I guess the question is at what point in time was your question referring to? Correct. Well, in my specific question, well, let me back up. There's two parts that are important to that. First of all, when Mr. Tucker arrived at the jail September 2009, I asked him in his deposition, at that time was the area around the thread infected? And he said not really. So at that time, he has all these other problems, lupus, colon cancer, needs to have his infusoport flushed, various other problems that Dr. Johnson's addressing. But then when I asked him, you showed Dr. Johnson the thread that had some infection around it the first or second time you saw Dr. Johnson after you were incarcerated in September 2009, and he says, yes, ma'am. So the first or second time that he was seen by Dr. Johnson, and I will note that that note from October 16th when Dr. Johnson examined the abdomen, it does note that Mr. Tucker mentions this wound sticking out from his abdomen. To read into that anything other than that Dr. Johnson would have examined not only just the abdomen but also this thread that he's complaining about. The problem is Dr. Johnson testified he didn't recall. Correct. Dr. Johnson does not recall whether or not he examined it at that time. But I believe based on Mr. Tucker's testimony that by the time that the thread was actually infected and that he complained about it, he was given bandages. He was given triple antibiotic ointment. He was given Keflex, which is an oral antibiotic to take. He was given iodine. Once he started complaining to Dr. Johnson about there being an infection, an infected wound, the proper treatments were provided. Can we parse down exactly what date that happened on? I don't think we can, but I think that it's telling that when he got to the jail, Mr. Tucker says that this thread was not very infected, and by the time that it was infected, by the time he reported it to Dr. Johnson, by the time Dr. Johnson takes a look at it, then Mr. Tucker himself admitted in his deposition that he was appropriately treated for it. I'm not sure because appellant's brief didn't make very clear to me whether there is an argument here as to whether or not a different standard should apply to pretrial detainees as opposed to post-trial detainees as far as medical care is concerned. In this case, however, for all the reasons that I've stated, I believe that Dr. Johnson is still entitled to summary judgment in his favor. Even if we apply that heightened standard for a pretrial detainee, that would mean that we'd have to show that the action was not reasonably related to a legitimate goal or was for some arbitrary or capricious purpose. That's not a situation we have here. Everything that was done for Mr. Tucker to treat his lupus, to treat his Raynaud's disease, to treat his colon cancer, to treat all of the problems that he had while he was there at the jail, all of these things were done for legitimate medical purposes. And unless your honors have questions, I have to pass it on over to Mr. Thompson. Very well. Thank you. Thank you. I'm sorry if you have to lower the podium. May it please the Court. Good morning, Mr. Thompson. Good morning. You may proceed. Good morning. I represent Appellee Nurse Rhonda Anderson. The only claim on appeal left against Nurse Anderson is the successive forced claim arising out of the January 7, 2010 code response when Nurse Anderson and others responded when plaintiff had fainted in his cell. There are two independent bases for affirming summary judgment in Nurse Anderson's favor. Stated simply, one, there were no genuine issues of fact on that claim, and two, no disputes that were there were material. On the genuine issue of fact, the district court relied on Scott v. Harris and Reed v. St. Charles, Missouri, which for the proposition that when a plaintiff offers only his unsubstantiated, self-serving allegations, and that blatantly contradicts all other evidence of record, the court need not accept the plaintiff's version of the facts as true. Now, the plaintiff would like to characterize Scott v. Harris as being some sort of special rule based on what the defendant offered in support of his motion for summary judgment. But in fact, Scott v. Harris starts out from the proposition of the defendant who's already carried their initial burden of proof on the motion for summary judgment. So Scott v. Harris and Reed are about what does the plaintiff have to offer to defeat a properly supported motion for summary judgment. And in that sense, it's not new at all. Because in Reed v. St. Charles, this court cited two cases specifically from before Scott v. Harris. They cited Bass v. SBC Communications and Moody v. St. Charles County together for the proposition that a plaintiff cannot defeat a motion for summary judgment with his own unsubstantiated, self-serving allegations, but must offer sufficient probative evidence to allow finding his favor without resort to speculation, conjecture, or fantasy. And here, a plaintiff has not done that. Judge Murphy, you asked the Appellant's Counsel whether or not there were any other witnesses. And I believe the response was yes, but that goes to the white. But in Moody v. St. Charles County, this court looked specifically at the questions the appellant had failed to ask during some depositions and looked at the evidence the appellant had failed to develop. And the fact of the matter was, there were four or five people beyond the named parties in this case who witnessed this, and not one of them was deposed, not one of their testimony was offered. So we truly are left with only plaintiffs' unsubstantiated allegations. And if there was something as to— Well, with respect to the dropping on the bed, why—I mean, you have his testimony, plus you have scratches or injury on his back. Why isn't that a no? Well, Your Honor, the altercation form actually says it was a skin scrape to the left hip. And I wrote this down because I wanted to make sure I could get it. The plaintiff was asked in his deposition, first he was asked if he had any visible injuries to his back. And his general response was, I can't see my back, sir, I wouldn't know. Then he was asked, did you have—and this is quoting— did you have any other bruises or anything on any other part of your body that resulted in this episode where they dropped you? Answer, no, sir. I had some other sores and stuff, but it wasn't from that. In his own deposition testimony, he conceded that any other sores and stuff were not from this incident. So he has no injury. And that brings me to the second point. To the extent there are any disputes, they are not material. This case has to be considered in the context when it occurred. The plaintiff admitted that they were rushing to help him. So accept every word the plaintiff has said as true. And when you consider that they are rushing to respond to a medical emergency, they're applying treatment that admittedly requires physical contact. Applying an ammonia inhalant, moving him to his bed. In that context, something that might be characterized as force might be inevitable. And in Chambers v. Pennycook, this court said we can consider as a relevant factor the degree of injury. Well, here there simply is no evidence that he suffered any injury. And, in fact, in Chambers v. Pennycook, this court left it as an open question whether you could have an excessive force claim with no injury. And that is presented here. And I would say in Chambers it was noted that if he has de minimis injury, it may be that they can only prove de minimis force. Well, if you have no injury, it may be that you can only prove no force. Thank you, Your Honor. Very well. Ms. Davis Tanner. Thank you very much. If I could just address a couple of points raised by the accolades in this case. A couple of them mentioned they want to minimize the value of the altercation form because there's the back of Mr. Tucker's hip is what was noted on the altercation form. Mr. Tucker noted in his deposition that his back hurt. The area that circled on the altercation form certainly forms part of his back. And while that's a legitimate area of cross-examination, the location of the circle on the altercation form is not of a type that's so overwhelming it could completely overcome Mr. Tucker's testimony in his grievance forms concerning his injury. My other point is that Dr. Johnson's counsel admitted that we can't pin down exactly when Dr. Johnson examined the infected thread on Mr. Tucker. That calls to mind the Hartsville case decided by this court in which a prisoner was not given medical attention for an infection for approximately six weeks. Mr. Tucker testified that his wound was already seeping blood and pus around the time that he came to the jail. He reported these injuries as of September 30th at the latest, and he contends that he did not receive treatment for that until into November. I think it was November 20th. So even if there is a delay in treatment here, couldn't we affirm anyway because there was no verifying medical evidence  No, Your Honor. The court did not require verifying medical evidence in Hartsfield. In that case, the infection was severe enough that a lay person could recognize the seriousness of the injury and the need for a doctor's attention. How about Laughlin? Yes, Your Honor. In that case, we would contend that this case is actually more analogous to Hartsfield, which also involves an infection. Additionally, the Laughlin case, I don't believe, was decided on summary judgment, which makes a big difference in this case because Mr. Johnson just has to make a showing that he could prove his case at trial. Thank you, Your Honor. We thank both sides for the arguments. The case is submitted, and we will take it under consideration.